```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x
TEON BRUMMEL,

                    Petitioner,
      -against-                              **MEMORANDUM AND ORDER**
                                             Case No. 15-CV-05028 (FB)
MICHAEL CAPRA, Superintendent of
Sing Sing Correctional Facility,

                    Respondent.
---------------------------------------------------x
```

*Appearances:*

| | |
|---|---|
| *For the Petitioner:* | *For the Respondent*: |
| STEPHEN N. PREZIOSI, ESQ. | KENNETH P. THOMPSON, ESQ. |
| 48 Wall Street, Fifth Floor | District Attorney, Kings County |
| New York, New York 10005 | 350 Jay Street |
| | Brooklyn, New York 11201 |
| | |
| | By:   SETH M. LIEBERMAN, ESQ. |
| |            Assistant District Attorney |

**BLOCK, Senior District Judge:**

Teon Brummel is currently serving a sentence of twenty-five years to life following a conviction for second-degree murder in the Supreme Court of New York, Kings County. He petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, arguing that he was denied his constitutional rights to due process, the effective assistance of counsel, and to confront the witnesses against him. For the following reasons, the petition is denied.

# I

## A. Trial Proceedings

The charge against Brummel stemmed from the death of his girlfriend, Natasha Southerland, on September 20, 2004. The state presented evidence that Brummel had repeatedly stabbed Sutherland and struck her on the head with a blunt object. She died from those injuries.

Shortly after Southerland's death, Brummel crashed his car into a pole. He was hospitalized and prescribed Ativan and Haldol. Brummel was later visited in the hospital by Detective Willam Hogan, who was investigating Southerland's death. Detective Hogan first spoke with the attending physician, who told Hogan that Brummel "was not under the influence of any medications that would alter his ability to answer [Hogan's] questions." Trial Tr. 6. He then spoke to Brummel and advised him of his *Miranda* rights. Brummel stated that he had killed Southerland because she had five boyfriends, and that he had crashed his car in attempt to kill himself because he wanted to be with Sutherland. At trial, Detective Hogan testified as to both Brummel's confession and his doctor's statement. The prosecution had intended to call another doctor who had treated Brummel during his hospital stay, but learned during trial that the doctor believed—with some reservations—that Brummel might not have been capable of making a "reliable" statement while hospitalized. The

prosecution disclosed this information about a week before resting its case. Neither side called the doctor as a witness.

The prosecution introduced the murder weapons at trial. Police had recovered knives and pair of garden shears during their initial investigation of the crime scene, which had been carried out with the consent of Brummel's mother. Later, Detective Jay Poggi obtained a warrant to search the scene again, and found a barbell that appeared to have been the blunt object Brummel had used to strike Sutherland. Since the prosecution had not disclosed the warrant until the trial was underway, the trial judge allowed Brummel's counsel to question Detective Poggi *in camera*. The judge suppressed a floppy disk recovered from the scene as being outside the scope of the warrant, but allowed the barbell to be admitted into evidence.

Brummel's principal defense was that he was acting under an extreme emotional disturbance ("EED"). The EED defense reduces what would otherwise be murder to first-degree manslaughter if the defendant proves that he "acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse." N.Y. Pen. L. § 125.25(1)(a); *see also id.* § 125.20(2). Both the prosecution and the defense presented expert psychiatric testimony addressing this defense.

The defense expert, Dr. Drob, testified that Brummel's actions were the result of a "catathymic event," which he described as "an expression of emotion in which

3

there's a loss of control . . . a severe case of . . . suddenly losing control of one's emotions and behavior." Trial Tr. 645-46. He attributed the event to Brummel's traumatic childhood, the tumultuous nature of his relationship with Southerland, and his history of mental illness (borderline personality disorder). He testified that Brummel's catathymic event was "consistent with" a finding of EED. *Id*. at 646.

The prosecution's expert, Dr. Bardey, described EED as "an updated notion of the temporary insanity or heat of passion [defense]. . . and reflects the fact that the individual, as a result of significant trauma . . . was overwhelmed with emotion, and as a result, lost rational control over [his] behavior." *Id*. at 731-32. He drew a distinction EED and between a catathymic event: "the difference is, with catathymia, the individual sort of lets go and chooses to give in to the emotion, as opposed to EED, where they have no choice, they're overwhelmed and they can't do anything about it." *Id.* at 733. Dr. Bardey opined that Brummel's actions were not the result of EED. *Id*. at 734.

The jury found Brummel guilty of second-degree murder. As noted, he was sentenced to twenty-five years to life.

## B. Post-Trial Proceedings

On direct appeal, Brummel argued, *inter alia*, that the trial court had unfairly precluded Dr. Drob from testifying that Brummel's actions were influenced by EED. The Second Department affirmed, holding that that claim was "unpreserved for

4

appellate review and, in any event, without merit." *See People v. Brummel*, 962 N.Y.S.2d 182, 185 (2d Dep't 2013). The New York Court of Appeals declined review. *See People v. Brummel*, 21 N.Y.3d 941 (2013).

Brummel later moved for an order vacating his convictions pursuant to § 440.10 of the New York Criminal Procedure Law. He claimed violations of his constitutional rights to the effective assistance of counsel, to confront the witnesses against him, and to timely disclosure of exculpatory evidence. The § 440.10 court denied Brummel's motion in its entirety, but provided a reasoned decision only for the ineffective-assistance claim. *See People v. Brummel*, 2014 NY Slip Op. 32846(U) (N.Y. Sup. Ct. 2014). The Second Department denied leave to appeal. *See People v. Brummel*, 2015 N.Y. Slip Op. 67956 [U] (2d Dep't 2015).

Brummel then filed the present habeas petition. He argues:

(1) that the trial court violated his rights under the Confrontation Clause by allowing Detective Hogan to testify as to what his doctor said about his lucidity following the car crash;

(2) that the prosecution violated its obligations under the Due Process Clause and *Brady v. Maryland*, 373 U.S. 83 (1963), when it did not disclose that a treating doctor refused to opine that Brummel was capable of making a voluntary statement to Detective Hogan until trial was underway;

(3) that the prosecution violated its obligation under the Due Process Clause and *Brady* when it did not disclose that the barbell had been recovered pursuant to a search warrant, and that the search warrant lacked probable cause;

(4) that the trial court deprived Brummel of his constitutional right to present a defense by not allowing his psychiatric expert to opine that Brummel's actions were the result of EED.

Finally, Brummel recasts claims (1), (2) and (3)—but not (4)—as grounds for a claim that his was deprived of his constitutional right to the effective assistance of counsel because his trial counsel did not pursue those claims.

## II

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petitioner must first "exhaust[] the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The state court's disposition of the claim affects the scope of federal habeas review. "A federal habeas court will not review a claim rejected by a state court 'if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Beard v. Kindler*, 558 U.S. 53, 55 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). If, however, the state court reaches the merits, the writ cannot be granted unless the state court's adjudication

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Under those standards, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

All the claims raised in Brummel's habeas petition were raised in state court. The Confrontation Clause, *Brady* and ineffective-assistance claims were all raised in Brummel's § 440.10 motion. Although the § 440.10 court did not did not provide a reasoned decision for all of those claims, it denied them without invoking an independent state ground. Therefore, they were all disposed of on the merits. *See Harris v. Reed*, 489 U.S. 255, 263 (1989) (state court must "clearly and expressly" invoke state-law procedural bar); *Jimenez v. Walker*, 458 F.3d 130, 144 (2d Cir. 2006) (unreasoned disposition on the merits "focus[es] our review on the state court's ultimate decision").

The claim regarding Dr. Drom, by contrast, was raised on direct appeal. Brummel raised this claim in Point II of his brief to the Second Department. The appellate court's disposition—that the claim was "unpreserved for appellate review and, in any event, without merit," *Brummel*, 962 N.Y.S.2d at 185—imposes a procedural bar. "[W]hen a state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally

defaulted." *Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005) (quoting *Glenn v. Bartlett*, 98 F.3d 721, 725 (2d Cir. 1996)).

**A. Confrontation Clause**

The Sixth Amendment's Confrontation Clause bars the admission of "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant . . . had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 55 (2004). The state does not argue that Brummel's doctor's out-of-court statement was not "testimonial," or that its admission satisfied the requirements of *Crawford*. Instead, it argues that any error was harmless.

In the habeas context, error is harmless unless "it had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993) (citation and internal quotation marks omitted). That standard applies "whether or not the state appellate court recognized the error and reviewed it for harmlessness." *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007).

The Court agrees that admission of the statement, assuming it was erroneous, was harmless. Although Brummel claims that it vitiated his EED defense, the doctor's statement addressed Brummel's mental state after being hospitalized and medicated, not at the time of Southerland's death three days earlier. The statement was relevant to the voluntariness of Brummel's statement to Detective Hogan—an issue property

8

before the jury under New York law—but both the Second Department and the § 440.10 court noted overwhelming other evidence of guilt, and this Court finds no reasonable probability that the jury would have come to a different verdict had the statement been excluded. Indeed, while Brummel's counsel continued to dispute the *voluntariness* of his client's statement to Detective Hogan, he conceded at oral argument that the *substance* of the statement—that Brummel had killed Southerland—was undisputed at trial.

## B. *Brady*: Medical Testimony

Prosecutors have a clearly established duty to disclose all material, exculpatory evidence to the defendant. *See Brady,* 373 U.S. at 87. But "there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). This prejudice inquiry defines the required time for disclosure: "no later than the point at which a reasonable probability will exist that the outcome would have been different if an earlier disclosure had been made." *United States v. Coppa*, 267 F.3d 132, 142 (2d Cir. 2001). In other words, "*Brady* material must be disclosed in time for its effective use at trial." *Id*.

Brummel claims that the prosecution violated its *Brady* obligations when it did not disclose his treating physician's opinion about his statement to Detective Hogan until trial was underway. The § 440.10 court briefly addressed this argument, finding

9

that "[t]he People adequately provided the defendant with information regarding the doctor who believed the defendant was not in a position to make a voluntary statement when questioned by a detective at the hospital." *People v. Brummel*, 2014 NY Slip Op. 32846(U), at 5. This was neither an unreasonable application of the requirement that defense counsel must have sufficient time to make effective use of *Brady* material, nor an unreasonable determination of fact, given that defense counsel had at least a week to process the information before deciding not to call the doctor as a defense witness.

C. *Brady*/Fourth Amendment: Search Warrant

Brummel further claims that the prosecution's disclosure, during trial, that the barbell had been recovered pursuant to a search warrant violated *Brady*. The § 440.10 court did not supply its reasoning for denying this part of the motion, but, as with the Confrontation Clause claim, there is no evidence that it relied on an independent state ground.

As with the prior *Brady* issue, defense counsel learned of the search warrant in plenty of time to investigate it. He was allowed to question Detective Poggi about circumstances that might have called the warrant into question. He was then able to raise those issues before the trial judge, who allowed the barbell into evidence, but suppressed another piece of evidence because it was outside the scope of the warrant.

Even though the § 440.10 court did not provide its reasoning, its ultimate decision to deny this claim was not an unreasonable application of *Brady* and its progeny.

To the extent Brummel means to relitigate the search warrant's validity under the Fourth Amendment, *Stone v. Powell*, 428 U.S. 465 (1976), bars his path: "Where the state has provided an opportunity for a full and fair litigation of the Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 481-82. As the Court's analysis of the *Brady* aspect of the claim makes clear, the trial court gave defense counsel a full and fair opportunity to challenge the warrant.

### D. Fair Trial: EED

"[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (internal citations omitted). Brummel argues that he was deprived of that right because his psychiatric expert, Dr. Drob, did not testify, in so many words, that Brummel's actions were the result of EED. He argues that the error was compounded because the prosecution's expert, Dr. Bardey, testified that his actions were *not* the product of EED and erroneously defined EED.

Brummel gives no reason why the Court should review his claim notwithstanding the default.

11

Even if the Court were to address the claim, it would conclude that the Second Department's alternative ruling on the merits was not unreasonable. The record does not reflect that Dr. Drob was precluded from testifying that Brummel's actions were the result of EED. Rather, he merely recognized that EED was a legal concept, not a psychological term, and then testified that the psychological concept that Brummel had, in his opinion, exhibited—a "catathymic event"—was "consistent" with EED. Trial Tr. at 646-47. Dr. Bardey predictably disagreed and offered his opinion of the difference between the two. He also felt comfortable discussing EED as a legal concept, but defined it—according to Brummel—incorrectly. However, the trial judge sensibly allowed Dr. Bardey's testimony "because it would assist in terms of how he made his evaluation," and promised to "explain to [the jury] the appropriate law at the appropriate time." *Id.* at 729-30. She kept her promise and correctly defined EED in her instructions.[1] Given these circumstances, the Court is satisfied that Brummel was allowed a meaningful opportunity to present his EED defense.

---

[1] "Under our law, it is an affirmative defense to a charge of Murder in the Second Degree that the defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse. The reasonableness of that explanation or excuse is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be." Trial Tr. 910.

**E. Ineffective Assistance of Counsel**

The clearly established law governing Brummel's claim that he was deprived of his constitutional right to the effective assistance of counsel is set forth in *Strickland v. Washington*, 446 U.S. 668 (1984): "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. Then, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In addition, since the § 440.10 court addressed the claim on the merits, it is subject to AEDPA's stringent standard of review.

As noted, Brummel's ineffective-assistance claim incorporates his other claims for habeas relief. The Court has concluded that none of those claims warrant such relief, either because the state court's disposition was not an unreasonable application of Supreme Court precedent, or because any error was harmless. In other words, the claims Brummel argues his trial court should have made either would not have prevailed or, even if they had prevailed, would not have changed the outcome of the trial. As a result, Brummel cannot satisfy *Strickland*'s prejudice prong.

## III

Brummel's petition for a writ of habeas corpus is denied. In addition, the Court finds that none of Brummel's claims makes a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253.

**SO ORDERED.**

/S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
August 12, 2016